[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 419.]

COLUMBUS BAR ASSOCIATION *v*. FARKAS.

[Cite as *Columbus Bar Assn. v. Farkas*, 2002-Ohio-1238.]

*Attorneys at law—Misconduct—Two-year suspension with second year stayed with conditions—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct adversely reflecting on fitness to practice law—Handling a legal matter in which attorney is not competent—Handling matter without adequate preparation—Neglect of an entrusted legal matter—Charging clearly excessive fee—Failing to seek lawful objective of client—Prejudicing client during course of representation.*

(No. 01-1816—Submitted December 12, 2001—Decided March 6, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-02.

———————————

*Per Curiam.*

{¶ 1} In a five-count complaint, filed on January 29, 2001, relator, Columbus Bar Association, charged respondent, Jeffrey William Farkas of Columbus, Ohio, Attorney Registration No. 0061547, with multiple violations of the Disciplinary Code. The parties agreed to add an additional matter in a stipulation submitted at the hearing held on August 22, 2001, by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court.

Count One—Hairston Matter

{¶ 2} In 1990, the Franklin County Probate Court appointed Jacqueline Hairston as fiduciary for the estate of Lewis Hairston. Into early 1999, the estate remained open because it owed estate taxes of $300 to Ohio. On February 4, 1999, the probate court ordered Jacqueline to show cause why it should not hold her in contempt.

**{¶ 3}** On February 5, 1999, respondent, who did not represent Jacqueline in the probate court proceeding, filed a Chapter 13 proceeding on her behalf in the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division. In the filing, he listed the $300 as an unsecured priority claim to Ohio for estate taxes. The parties have stipulated that respondent should have known that the estate owed the estate tax debt and not Jacqueline, individually, and that she could not discharge the debt in bankruptcy.

**{¶ 4}** On March 8, 1999, the probate court found Jacqueline in contempt for having failed to file an estate status letter, failing to comply with the court order, and failing to appear at two scheduled hearings. The court sentenced her to three days in jail and ordered her to report for enforcement of the sentence on April 7, 1999. On April 7, the court delayed enforcement of the order for seven and one-half hours.

**{¶ 5}** During this delay, respondent filed a motion for a temporary restraining order, to prevent enforcement of the contempt order, in Jacqueline's bankruptcy case under the automatic stay provisions of Section 362, Title 11, U.S.Code. In support of this motion, respondent represented to the bankruptcy court certain facts suggesting that the probate court's contempt order may have been based solely on the failure of Jacqueline to pay estate taxes. Operating under these representations, the bankruptcy court granted the temporary restraining order and scheduled a hearing for April 15, 1999.

**{¶ 6}** At this hearing, the bankruptcy court found that respondent had made "materially misleading" allegations in the motion, and, without those allegations, the court may not have issued the temporary restraining order. The court further found that Jacqueline's bankruptcy proceeding had not been filed in good faith but, rather, was filed in an effort to delay the proceedings in probate court. The bankruptcy court lifted the temporary restraining order, dismissed the bankruptcy

case with prejudice, and assessed $3,429 as sanctions against respondent. The probate court, nevertheless, jailed Jacqueline for contempt.

**{¶ 7}** Respondent stipulates that, at the filing of the motion, he should have known that the representations made in support of the motion could be viewed as a misrepresentation, that the bankruptcy court would rely on these representations, and that the motion, under the circumstances, may not have been warranted. Respondent also stipulates that he did not adequately prepare for the probate case, did not associate with experienced probate counsel, and was not competent to intervene in the probate court proceedings. The parties stipulate that respondent violated DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), 1-102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law), 6-101(A)(1) (handling matter in which attorney is not competent), 6-101(A)(2) (handling matter without adequate preparation), and 6-101(A)(3) (neglecting legal matter entrusted to attorney).

Count Two—Freeman Matter

**{¶ 8}** Respondent filed a Chapter 13 bankruptcy for Michael Freeman in August 1998. After this case was dismissed, respondent refiled it in April 1999 and used virtually the same language contained in the original petition. In doing this, respondent neglected to set forth changes in Freeman's circumstances that had occurred during the intervening months, changes of which respondent had been advised by his client. Respondent charged Freeman $850 to file the second bankruptcy action without crediting him for $474.39 he had paid for the first filing.

**{¶ 9}** The parties stipulate that respondent violated DR 1-102(A)(5), 1-102(A)(6), and 2-106(A) (charging clearly excessive fee).

Count Three—Yoke Matter

**{¶ 10}** On May 6, 1999, Otha Yoke retained respondent to stop the sale of Yoke's Fairfield County home at sheriff's auction scheduled for May 14, 1999. At 9:43 a.m. on May 14, respondent filed a Chapter 7 bankruptcy proceeding in Columbus to obtain a stay of the sheriff's sale, which was to take place at 1:00 p.m. that afternoon in Fairfield County. Respondent failed to serve a copy of the stay or notify the sheriff about the bankruptcy action, and, consequently, the sheriff proceeded to sell the property.

**{¶ 11}** Thereafter, the mortgage company holding the lien on the home asked the bankruptcy court to lift the stay to effect the sale and release the bankruptcy estate's interest in the home. Respondent, believing that Yoke had given him permission to do so, a fact that Yoke disputes, signed an agreed order to annul the stay of the sheriff's sale. Respondent, on learning of the dispute to his authority, filed a motion to reconsider the agreed order, but the court overruled the motion.

**{¶ 12}** On August 16, 1999, Yoke was evicted from his home after respondent unsuccessfully sought a temporary restraining order from the bankruptcy court. Respondent's failure to notify the sheriff of the stay and to stop the sale resulted in Yoke's losing any opportunity to pursue additional equity in his home through a private sale, which Yoke believed to be available to him.

**{¶ 13}** The parties stipulate that respondent violated DR 1-102(A)(6), 6-101(A)(3), 7-101(A)(1) (failing to seek lawful objectives of client), and 7-101(A)(3) (prejudicing client during course of representation).

Count Four—Gooch Matter

**{¶ 14}** In an effort to save her home from foreclosure, Pamela Gooch engaged respondent to file Chapter 13 bankruptcy actions. Respondent filed one action in January 1998 and another one in July 1999; respondent charged Gooch successive fees of $850 for these two actions.

{¶ 15} On October 13, 1999, after the second case was filed but before a hearing on confirmation of the Chapter 13 plan, Gooch received notice that her home mortgage was being foreclosed on, and she immediately contacted respondent's office. The respondent provided Gooch evidence that he had faxed notice of the pending bankruptcy action to the mortgage holder. Respondent, however, took no formal legal steps to halt the foreclosure, although respondent's staff informally contacted the creditor's attorney, who withdrew the foreclosure proceeding.

{¶ 16} On the day she received the foreclosure notice, Gooch also received a solicitation letter from respondent. This letter stated that, "although I have never represented you in the past and do not know you, I am sending you this letter to inform you of some of the possible alternatives [to the foreclosure action]." Respondent further stated in the letter that he had obtained Gooch's name from court records. At the hearing in this matter, respondent admitted that he had not established a system to prevent sending solicitation letters to existing clients.

{¶ 17} In addition, on the same day Gooch received notice of the foreclosure, she received a letter from Alexandria Properties, Inc., an investment company. Respondent's brother and business partner, Timothy R. Farkas, had signed this letter; Alexander Properties shares the same address as respondent's law firm. The Alexandria letter said that Alexandria could provide help "to avoid foreclosure."

{¶ 18} Gooch, genuinely confused by the letters, tried repeatedly, but unsuccessfully, to contact respondent or another lawyer on his staff, leaving messages with respondent's staff. On November 4, 1999, Gooch, having received no information from respondent, sent a letter to the judge in her bankruptcy case and secured new counsel.

{¶ 19} The bankruptcy judge, after receiving this letter, issued a show cause order to respondent and another lawyer in respondent's office. The order set forth

the judge's concern about respondent's lack of timely response to the foreclosure proceeding, lack of communication with his client, and his and his brother's solicitation letters sent to Gooch.

**{¶ 20}** After a hearing, the court held respondent and another lawyer in his office in contempt. The court ordered them to pay a judgment of $2,500 in favor of Gooch, return all fees to Gooch, write a letter of apology to Gooch, reimburse costs incurred by Gooch, attend continuing legal education classes, and install a procedural safeguard in all cases filed by the Farkas firm to allow the court to "more closely scrutinize the nature and quality of work performed." Respondent has fully complied with the court's order.

**{¶ 21}** The parties stipulate that respondent violated DR 1-102(A)(6), 6-101(A)(3), 7-101(A)(1), and 7-101(A)(3).

Count Five—Office Arrangements

**{¶ 22}** Respondent and his brother, Timothy, own Beebles, Inc., and Beebles owns the building in which respondent and Timothy operate their respective businesses. Timothy has an office on the first floor of the building for Alexandria Properties, Inc., and A Loan Company, which buy, sell, and own real estate. Beebles, owned by respondent and Timothy, owns A Loan Company.

**{¶ 23}** Respondent's law office is on the second floor of this building, and a visitor to the law office must pass through Alexandria Properties and A Loan Company to reach respondent's office. Alexandria Properties and respondent share personnel, office equipment, a conference room, and a telephone system. Respondent stipulates that he could have better insulated his office from the other businesses to ensure confidentiality and security of client information. In fact, someone from Timothy's businesses could view a confidential document received on the common fax machine.

**{¶ 24}** Respondent and Timothy jointly engaged one individual to visit the Franklin County Courthouse to review foreclosure filings. This person, employed

6

and paid by respondent, would secure the name of persons named as defendants in foreclosure filings. The employee would then prepare, sign, and send two separate solicitation letters to those defendants: one for respondent offering legal representation, and the other for Alexandria Properties offering loan or real estate purchase services. This operation presented a strong appearance of a connection between the law firm and Alexandria; it led to respondent's troubles with Gooch.

**{¶ 25}** Once respondent, while representing a debtor in a bankruptcy proceeding, proposed to the court that it allow the debtor to refinance a mortgage through A Loan Company, a company owned by Beebles, Inc., which respondent jointly owned. Respondent withdrew this proposal after the court questioned its propriety.

**{¶ 26}** The parties stipulate that respondent violated DR 1-102(A)(6).

Additional Matter Not Included in Complaint—Saari Matter

**{¶ 27}** The parties stipulate that this court may consider respondent's representation of Michael J. Saari, Jr. Saari engaged respondent to defend an adversary action to determine dischargeability brought by a plaintiff-creditor, who had served the complaint on Saari and respondent. Saari had a viable defense to the claim, but respondent did not file an answer. The creditor obtained a default judgment against Saari for $4,034.48.

**{¶ 28}** The court, on receiving a letter from Saari, scheduled a hearing. Before the hearing, however, respondent submitted a proposed order that would allow Saari to pay the judgment in installments. Nevertheless, the court, after hearing, concluded that respondent had not competently represented Saari and that respondent had misidentified the status of the creditor's lien in the original bankruptcy petition. Finally, the court concluded that Saari might have avoided the lien, discharged the entire obligation, and kept possession of the pledged properties had respondent asserted available defenses. Faced with these findings, respondent

agreed to satisfy the creditor's entire judgment against Saari; respondent has since satisfied this judgment.

{¶ 29} The parties stipulate that respondent violated DR 1-102(A)(6), 6-101(A)(3), 7-101(A)(1), and 7-101(A)(3).

{¶ 30} As to mitigation, respondent was young and inexperienced when he launched a large advertising campaign to build a bankruptcy practice. The practice grew exponentially from 1995, when he started with few cases and no staff, to 2000, when he accepted seven hundred cases, and employed four nonattorney staff and two other lawyers. Respondent, apparently, could not cope with the growth of his practice. Respondent has since wound down his practice and has entered a northeastern university to pursue an MBA degree. Respondent does not intend to practice law in the future and, instead, plans to enter business.

{¶ 31} The panel recommended the sanctions stipulated to by the parties, a two-year suspension, with one year stayed on probation, on the "usual terms and conditions" imposed by this court. The panel also recommended that respondent (1) participate in a mentoring program upon such terms and conditions as relator requires during the probationary period, (2) commit no violations of the Disciplinary Code during the term of suspension and probationary period, and (3) complete six hours of approved continuing legal education training dealing with office practices during the probation period. The board adopted the findings, conclusions, and recommendation of the panel and recommended that respondent be suspended from the practice of law for two years, with one year stayed with probation and on those conditions as set forth in the panel report. The board further recommended that respondent pay for the costs of these proceedings.

{¶ 32} We have reviewed the record and proceedings. We adopt the findings, conclusions, and recommendations of the board, with the following clarifications. We hereby suspend respondent from the practice of law for two years, with the second year stayed. During both years, respondent shall commit no

further violation of the Disciplinary Rules. If he does commit any violation, the entire two-year suspension shall be imposed. For the second year, respondent shall (1) be on probation, (2) be monitored by an attorney of relator's choosing for purposes of overseeing respondent's practice and office procedures, with periodic reports to be made to relator, and (3) complete six hours of approved continuing legal education dealing with law office procedures as part of his general continuing legal education requirements under Gov.Bar R. X. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

——————————

*Jerry Silverstein, Bruce A. Campbell* and *Stephen S. Francis*, for relator.

*Charles W. Kettlewell*, for respondent.

——————————